UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In Re:                                         Chapter 11

    ANTHONY G. SALEH,              Case No.: 07-41831

        Debtor
-----------------------------------------------------------X

## MODIFIED AMENDED DISCLOSURE STATEMENT

### I. INTRODUCTION

Pursuant to Section 1125 of title 11, United States Code (the "Bankruptcy Code") ANTHONY G. SALEH (the "Debtor"), provides this Disclosure Statement to all of his known creditors and other parties in interest in order to provide information deemed by the Debtor to be material and necessary to enable such creditors and parties in interest or make a reasonably informed decision in the exercise of their rights to decide whether to object or participate in the Debtor's Plan of Reorganization (the "Plan"). The Plan is annexed hereto as Exhibit "A".

The information contained in this Disclosure Statement is based on the books and records of the Debtor and is believed to be accurate. It has not been subject to a certified audit or an independent review. Therefore, no representation or warranty is made as to its accuracy or completeness. However, the Debtor has reasonably endeavored to obtain and supply all material information.

Terms utilized in this Disclosure Statement, if not defined herein, shall have the same meaning as such terms are used or defined in the Plan or the Bankruptcy Code, unless the context hereof requires a different meaning.

THE BANKRUPTCY COURT HAS SCHEDULED _____ \_\_\_, 2008 AT \_\_\_\_\_ A.M. OF THAT DAY AS THE DATE AND TIME OF THE HEARING ON CONFIRMATION OF THE PLAN AND OBJECTIONS THERETO, WHICH HEARING WILL BE HELD BEFORE DENNIS E. MILTON, UNITED STATES BANKRUPTCY JUDGE IN THE UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF NEW YORK, 271 CADMAN PLAZA EAST, BROOKLYN, NEW YORK 11201. CREDITORS OF AND HOLDERS OF INTERESTS IN, THE DEBTOR MAY ATTEND SUCH HEARING. THE BANKRUPTCY COURT HAS FIXED _____ \_\_\_, 2008 AT 5:00 P.M. AS THE DATE AND TIME BY WHICH ALL WRITTEN OBJECTIONS TO CONFIRMATION OF THE PLAN SHALL BE FILED WITH THE BANKRUPTCY COURT AND SERVED UPON THE ATTORNEYS FOR THE DEBTOR AND UPON THE UNITED STATES TRUSTEE.

YOU ARE URGED TO REVIEW THE PLAN AND THIS DISCLOSURE STATEMENT WITH COUNSEL OF YOUR CHOICE.

The Debtor proposes to pay all Allowed Claims in full -- but over time in deferred payments the full amount of their claim, claimants are considered impaired and are entitled to vote upon the Plan. Other than the information set forth in this Disclosure Statement, the Debtor has authorized no person or entity to make representations concerning the Debtor, his business, his future income, the value of the Debtor's assets or the amounts to be distributed under the Plan.

## II. HISTORY OF THE DEBTOR AND THE BANKRUPTCY CASE

A. <u>The Debtor</u>. The Debtor is a medical doctor licensed by the State of New York in approximately 1988. He has been self employed either individually or through his

professional corporation since 1998. He is a leading practioner in his specialized field of pulmonary medicine. Besides conducting his medical practice he is also a lending lecturer in his specialization and is also an adjunct professor. Almost all of the Debtor's professional income flows into his P.C. The P.C. pays the expenses associated with operating his professional corporation, including employees payroll, rent, insurance, supplies and utilities. In prior years, the Debtor also paid his personal expenses through the corporation. Then at the end of the year, he had a personal income tax liability because of the payment of the personal expenses through the corporation was considered personal income. After doing this for several years the Debtor accrued a large tax bill. As of the filing date he owed to the Internal Revenue Service for tax, interest and penalties $338,759.61. As of the filing date he owed New York State Department of Taxation and Finance $83,915.15 for taxes, interest and penalties. These liabilities were caused by the Debtor's neglect of his personal finances while he devoted all of his time to his practice. Immediately before filing this petition, the Debtor hired a new CPA, (who has also been retained in this Chapter 11) who has assisted the Debtor in reorganizing his administrative procedures to insure current taxes are paid timely.

B. <u>Current Operation</u>. Since the filing of a petition the Debtor has continued his employment by the P.C. as a medical doctor. The Debtor has remained current on his post petition liabilities, including child support and maintenance to his wife. The Debtor has also been setting aside a depository into a separate bank account of approximately $2,000 per week to be used to help fund a Plan of Reorganization.

### III. **SUMMARY OF THE PLAN**

The following is a summary of certain provisions of the Plan. IT IS NOT A

3

F:\DOCS\SALEH\DISCLOSURE STATEMENT\5-8-08DISCLOSURE STATEMENT.DOC

COMPLETE STATEMENT OF THE PLAN AND IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO PROVISIONS OF THE PLAN. The Plan is annexed to this Disclosure Statement as <u>Exhibit "A"</u>. The Plan, which is subject to the provisions and incorporates the definitions of the Bankruptcy Code, provides for the treatment of all creditors of the Debtor. BECAUSE THE PLAN DEALS WITH COMPLEX LEGAL CONCEPTS, AND INCORPORATES THE DEFINITIONS AND REQUIREMENTS OF THE BANKRUPTCY CODE, YOU MAY WISH TO CONSULT WITH AN ATTORNEY ABOUT THIS.

### A. Summary of Classification and Treatment of Claims and Interests under the Plan

The Plan classified Claims and Interests of the Debtor into two (2) classes (the "Classes"). The Classes and payments to be made in respect of, or treatment proposed to be accorded to, Allowed Claims of each Class under the Plan are summarized and described below. The term "Allowed Claim" is defined in the Plan.

**1. Administrative Claims;**

Administrative Claims include the claims of professionals under Sections 327 and 330 of the Bankruptcy Code ("Allowed Claims of Professionals") and the statutory fees due the Office of the United States Trustee. The Allowed Claims of Professionals will include the allowed fees and expenses of Debtor's counsel for legal services rendered to the Debtor and its Estate in connection with this bankruptcy case, and the accountant to the Debtor Feldman & Associates.

The amount that will be payable with respect to the Allowed Claims of Professionals is not yet definitively known. The Debtor caused its attorneys to receive an initial retainer

of $20,000. It is estimated the Debtor's total legal fees will be approximately $40,000. It is estimated the accountant for the Debtor will be owed $25,000. The accountant received a pre-petition retainer of $10,000. The amount ultimately paid to the Debtor's attorney and accountant is subject to certain limitations contained in the Bankruptcy Code and must be approved by the Court. Any party in interest may object to the approval of such requests at any hearing before the Court on allowance of Administrative Claims. The Allowed Claims of Professionals shall be paid in full in cash on the date an order from the Court allowing such claims becomes a final and nonappealable order or at such time as may be acceptable to such professionals. Pursuant to 28 U.S. C. § 1930, fees due the Office of U.S. Trustee will be paid, as billed, through entry of the final decree.

2. **Class 1 Priority Claims;**

This class consists of substantially all of the three claims, the IRS, the New York State Department of Taxation and Finance, and the New York City Department of Finance. The claim by the IRS is entitled to priority pursuant to Section 507(a)(8) of the Code. The priority portion of the IRS claim is $374,713.83. The IRS will be paid in no more than 108 equal consecutive monthly payments of $3,469.57 plus interest at the applicable non-bankruptcy law rate. Additionally, the IRS is holding a tax refund due the debtor for 2007 in the sum of $25,111.00, which upon confirmation will be applied to the claim. Any refunds that the debtor is entitled during the term of the payment plan shall also be applied to the claim. The IRS claims $238,688.00 of this claim is secured, but the Debtor has no meaningful assets to which the claim can be secured, so, it is being treated as an unsecured priority claim. New York State claims a priority tax amount of $83,915.15. It is alleged $46,354.15 is secured, but as with the IRS the Debtor has no meaningful assets to

secure the claim and therefore he will treat the entire claim as an unsecured priority claim. New York State will be paid no more than 84 equal consecutive monthly payments of $999.00 plus interest at the applicable non-bankruptcy law rate. New York City has a claim for commercial rent tax and incorporated business tax totaling $20,730.00 which is entitled to priority. This claim will be paid 100% of the allowed amount in no more than eighty four equal monthly payments of $247 each plus interest at the applicable non-bankruptcy law rate. Because this class is being paid in full, with applicable interest it is not impaired and not entitled to vote upon the plan. Normally tax creditors must be paid within the five years but in this case they have agreed to allow the Debtor a nine year payment term.

3. **Class 2 Priority Domestic Support Obligation:**

This class consists of the claim by Teresa Davis for maintenance and child support for Olivia Saleh, the Debtor's daughter for child support, pursuant to a Judgment of Divorce dated July 6, 2005. The Debtor is obligated to pay a combined $14,000 per month. The Debtor was current on this obligation as of the filing date. He has remained current post petition and will continue to pay this obligation in accordance with the terms of the Judgment of Divorce. This class is unimpaired and not entitled to vote.

4. **Class 3 Unsecured Claims:**

**CLASS 3**: Class 3 consists of all general unsecured allowed claims against Debtor. This Class will be paid 100% of its claims. The distribution will be paid in no more than 108 equal consecutive monthly payments and distributed to class members pro rata. Because Claims in this Class will be paid 100% of their Allowed Amounts in full without interest, but over time they are impaired and entitled to vote upon the Plan.

This class consists of the IRS for non priority portions of its claim in the amount of

6
G:\DOCS\SALEH\DISCLOSURE STATEMENT\5-8-08DISCLOSURE STATEMENT.DOC

$20,809.41. It also consists of all the other Debtor's general unsecured creditors who were scheduled in the amount of $61,508.10. Including the non priority portion of the IRS claim in the amount of $20,809.41, this class will be paid a total $82,319.00. The payment to all members of this class will be $763.00 per month, during the 108 month payment terms of the plan.

## B. Classes Impaired Under the Plan

Under Section 1126 of the Bankruptcy Code, classes of Claims or Interests which are impaired are entitled to vote on a plan of reorganization. Under Section 1124 of the Bankruptcy Code, a Class of Claims or Interests is impaired unless the plan, with respect to such class:

    a. leaves unaltered the legal, equitable and contractual rights to which such Claim or Interest entitles the holder of such Claim or interest; or

    b. reinstates a previously accelerated Claim or Interest by (a) curing any preparation defaults (other than a default under Section 365(b)(2) of the Bankruptcy Code, (b) reinstating the maturity of such Claim or Interest as it existed prior to default, (c) compensating the holder of such Claim or Interest for damages incurred as a result of reliance on a contractual acceleration provision or similar applicable law, and (d) not otherwise altering the legal, equitable or contractual rights to which such Claim or Interest entitles the holders of such Claim or Interest; or

    c. provides on the Effective Date that (a) with respect to a class of Claims, the holders of such Claims receive cash equal to the allowed amount of their Claims; and (b) with respect to a class of Interests, the holders of such Interests receive the greater of any fixed liquidation preference that they are entitled to under any security, or any fixed price at which the debtor may redeem such security pursuant to the terms of such security.

C. **Objections to Claims**

Under Section 502 of the Bankruptcy Code, the Debtor or any interested party may file an objection to the validity, nature or amount of any Claim. Any pre-petition Claim listed as not disputed, not contingent and liquidated as to amount on the schedules and amendments, if any, that the Debtor files with the Court is deemed allowed unless an interested party files an objection. Pursuant to an Order dated June 13, 2007, (the "Bar Order") to be entered by the Bankruptcy Court, July 31, 2007 (the "Bar Date") will be fixed as the last day for the filing of proofs of Claim.

After confirmation of the Plan, the Court will retain jurisdiction to resolve, among other matters, issues relating to classifications of, and objections to, Claims. Objections to claims will be filed no later than 60 days after confirmation of the Plan.

In connection with cash distributions to be made to holders of Claims, there shall be reserved from any distribution to the holder of such Claim, the amount of cash which would be paid in respect of such Disputed Claim if the full amount of such Claim were deemed to be an Allowed Claim, or such lesser amount as the Court may determine. Pending the determination of the allowability of such Claim by the Court, an amount of cash equal to the Disputed Claim or such lesser amount as the Bankruptcy Court may have determined shall be deposited by the Reorganized Debtor within ten (10) business days (i) after the Effective Date or (ii) after such objection is interposed, whichever is later, into a non-interest bearing account maintained by Steinberg, Fineo, Berger & Fischoff, P.C. Upon such Claim becoming an Allowed Claim by the Court, any cash distribution then due to be made in respect of such Claim shall be paid, within five (5) business days after such order

G:\DOCS\SALEH\DISCLOSURE STATEMENT\5-8-08DISCLOSURE STATEMENT.DOC

determining the claim becomes a final non appealable order. Any moneys remaining on deposit with respect to Disputed Claims after their resolution or determination by the Court shall be distributed by the Debtor pursuant to the terms of the Plan.

### D. Distributions Under the Plan

The Plan provides further that if any person entitled to receive a distribution under the Plan cannot be located within reasonable time after the Effective Date, such distribution shall be set aside and held in a segregated non-interest bearing fund to be maintained by Steinberg, Fineo, Berger, & Fischoff, P.C. for the benefit of the Reorganized Debtor. If the person entitled to such distribution is located within sixty (60) days after the Effective Date, such distribution shall be paid and distributed to such person or if such person cannot be located after sixty days from the date any payment is due under the Plan, such distribution shall be retained by the Debtor.

### E. Effective Date of the Plan

Definition 8 of the Plan provides that the Effective Date shall be ten days after entry of an order confirming the Plan.

### IV. MEANS OF IMPLEMENTING THE PLAN

The funds required for the confirmation and performance of this Plan shall be provided from earnings of the Debtor as a medical doctor employed by his Professional Corporation. The Plan requires combined monthly payments of approximately $5,478.00 plus interest of approximately $2,700 per month during the initial months of the payment plan. The Debtor has set aside between $4,000 and $8,000 a month since the filing of the petition and believes his earnings will be sufficient in the future to meet the obligation. Currently the Debtor has on deposit, in an escrow account of his attorneys, approximately $77,600 to be paid towards the Plan. The Debtor's accountant has also prepared a projection for the Debtors income and expenses which is annexed hereto as Exhibit "B", which indicates the debtor will have sufficient income to make the payments requested

under the Plan. The Debtor will be obligated to pay to the Office of the United States Trustee, the statutory fees due under 28 USC 1930(a) throughout the entire payment term until entry of the final decree. The fees have also been budgeted in the projections. The Debtor shall make an initial pro rata distribution to Class I priority creditors, within thirty days of the Effective Date, of the accumulated funds, less the court approved administrative expenses.

## V. EXECUTORY CONTRACTS AND LEASES

The Debtor is the lessee of a 2007 Lexus R330 from Toyota Motor Creditor Corporation. It is a 36 month lease, which provides for monthly payments of $767.00 per month. The Debtor is current on the lease and intends to assume the lease upon confirmation.

## VI. LIQUIDATION ANALYSIS

The Debtor does not own any real property. All of the Debtors personal property is of minimal value and exempt from creditors claims thereby, there is no property to liquidate for the benefit of creditors. The Debtors only significant asset is his Professional Corporation but because its value is derived from the Debtor's personal services, it also would have little or not value in a liquidation. As a result the 100% distribution proposed for all Claims is more than creditors would receive in the event the case was converted to a Chapter 7 liquidation. In the event the case was dismissed, it is unlikely the general unsecured creditors would receive any payments because the taxing authorities would be able to intercept his payments from government agency and insurance carriers.

## VII. PREFERENCES AND FRAUDULENT CONVEYANCES

The Debtor does not believe it has made any pre-petition payments which could be considered preferential. The Debtor represents that no debt repayments other than payments on credit cards in the ordinary course were made to any relatives, partners, present or former business associates, or close friends within one year prior to the petition date. The Debtor and its counsel discussed the Debtor's business affairs for the six years prior to the petition date, including an oral review of all transfers of significant assets, if any. Based upon the information provided by the Debtor to his counsel, the Debtor was advised that it could represent that there are no fraudulent conveyances. To the extent this paragraph discloses a discussion between the Debtor and counsel, it is not intended to be a waiver of the attorney-client privilege.

## VIII. ACCEPTANCE AND CONFIRMATION OF THE PLAN

### A. Confirmation Hearing

The Bankruptcy Court will set a date and time for a hearing to determine whether the Plan has been accepted by the requisite numbers of creditors and interest holders and whether the other requirements for confirmation of the Plan have been satisfied. Each creditor and interest holder will receive notice of the confirmation hearing.

### B. Requirements for Confirmation

In order to confirm the Plan, Section 1129 of the Bankruptcy Code requires the Court to make a series of determinations concerning the Plan, including:

i) the Plan classifies Claims and interests in a permissible manner;

ii) the Plan complies with the technical requirements of chapter 11 of the Bankruptcy Code;

iii) the proponent of the Plan has proposed the Plan in good faith;

iv) the Plan proponent's disclosures concerning the Plan have been adequate and have included information concerning all payments and distributions to be made in connection with the Plan; and

v) that the requisite number of classes and claims within such classes have voted in favor of confirmation.

The debtor believes that all of these conditions have been met or will be met by the time of the hearing on confirmation of the Plan, and will seek a determination of the Court to this effect at the hearing on confirmation.

Pursuant to the Plan, the Debtor reserves the right to modify or withdraw the Plan in its sole and absolute discretion prior to the Confirmation Date and it thereafter may modify the Plan in accordance with Section 1127 of the Bankruptcy Code.

## C. Acceptance Necessary for Confirmation

The Bankruptcy Code requires that the Plan be accepted by requisite votes of creditors and interest holders, except to the extent that "cram down" is available under Section 1129(b) of the Bankruptcy Code. The Bankruptcy Code further requires that the Plan be feasible. This means that confirmation of the Plan is not likely to be followed by the liquidation of, or further reorganization by, the Debtor.

The Bankruptcy Code also requires that the Plan place each creditor's Claim and each interest holder's Interest in a class with other Claims or interests which are substantially similar. The Debtor believes that the classification system in the Plan meets the Bankruptcy Code's standard. Although the Court must independently conclude that the Plan's classification system is legally authorized, any creditor or interest holder who believes that the Plan has improperly classified any group of Claims or interests may object

to confirmation of the Plan.

At the confirmation hearing, the Court must determine, among other things, whether the Plan has been accepted by each class of creditors or interest holders whose Claims or interests are impaired under the Plan.

### D. Confirmation of Plan Without Necessary Acceptances and "Cram Down"

The Debtor does not intend to invoke the cram down provisions of the Bankruptcy Code.

### 5. Persons Entitled to Vote on the Plan

The Bankruptcy Code provides that unimpaired classes are deemed to have accepted the Plan. Accordingly, only the votes of classes whose Claims or interests are impaired by the Plan will be counted in connection with confirmation. Generally, this includes any creditors, who, under the Plan, will receive less than payment in full of the allowed amount of their Claims on the Effective Date or in full but over time. In determining acceptance of the Plan, votes will be counted only if submitted by a creditor or interest holder whose Claim or interest is scheduled by the Debtor as undisputed, non-contingent, and liquidated or who timely filed prior to the Bar Date with the Bankruptcy Court a proof of Claim or interest which has not been objected to or disallowed. Holders of Class I and Class II claims are entitled to vote. A sample ballot is annexed hereto as Exhibit "C".

### F. Solicitation of Acceptances

This Disclosure Statement must be approved by the Court in accordance with Section 1125 of the Bankruptcy Code and be provided to each creditor whose Claim has been scheduled by the Debtor or who filed a proof of Claim and to each interest holder. This Disclosure Statement is intended to assist creditors whose Claims are impaired in

evaluating the Plan in determining whether to accept or reject the Plan. Under the Bankruptcy Code, acceptance or rejection of the Plan may not be solicited unless a copy of this Disclosure Statement is furnished. The Court's approval of the Disclosure Statement means that this document sets forth "adequate information" as required by the Bankruptcy Code, and does not constitute a recommendation by the Court either for or against the Plan.

## VII. TAX CONSEQUENCES OF THE PLAN

NOTHING IN THE PLAN OR THIS DISCLOSURE STATEMENT IS INTENDED TO SUGGEST THE NATURE OF THE TAX CONSEQUENCES, IF ANY, TO ANY PARTY IN INTEREST. Each creditor or party in interest should consult their own tax professionals to determine the tax consequences, if any, of this proceeding to their situation.

Dated: Woodbury, New York
       June 2, 2008

                                     Respectfully submitted,

                              By:
                                ANTHONY G. SALEH
                                Debtor and Debtor-in-Possession

PREPARED BY:

STEINBERG, FINEO, BERGER & FISCHOFF, P.C.
40 Crossways Park Drive
Woodbury, New York 11797
(516) 747-1136

Gary C. Fischoff, Esq.
Attorneys for the Debtor
and Debtor-in-Possession